IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VANGURA KITCHEN TOPS, INC. d/b/a
VANGURA SURFACING PRODUCTS AND
VANGURA LAMINATED PRODUCTS,

      Plaintiff,

      v.

C & C NORTH AMERICA INC. d/b/a
COSENTINO USA and COSENTINO USA,
INC.,

      Defendant.

13cv0102
**ELECTRONICALLY FILED**

### Memorandum Opinion on Motion to Dismiss Due to Arbitrability of Dispute (doc. no. 11)

#### I. Introduction

This dispute has a procedural history dating back to 2008, when Vangura Kitchen Tops. Inc. ("Vangura") filed a lawsuit in this Court against defendant, C & C North America d/b/a Cosentino USA (C & C) (among others), alleging breach of contract related to a sublicensing agreement, wherein C & C obtained the right to fabricate, promote, sell, install and service Silestone Products in Western Pennsylvania. See Civil Action Number 2:08-cv-1011. After two Court-ordered mediations, the parties reached a settlement of their claims, as well as a plan for resolution of future disputes that might arise as a result of their ongoing business relationship. In contemplation thereof, in May of 2009, the parties executed a Master Distribution/Distribution and Settlement Agreement (hereinafter "Settlement Agreement" or "2009 Settlement Agreement") that provides, *inter alia*, Vangura would be the exclusive Master Distributor to purchase Silestone Products from C & C, and could promote, market, and sell the same within

1

the Western Pennsylvania area. That document, however, was not attached to the stipulation and dismissal with prejudice in the underlying action; rather, it has been attached as an exhibit to the instant motion. Doc. No. 13-1.

On January 11, 2012, Vangura initiated a civil action by filing a Petition to Enforce Settlement in the Court of Common Pleas of Allegheny County, Pennsylvania, at docket number GD 13-000961. C & C then removed this lawsuit to this Court. Doc. No. 1. In this action, Vangura alleges that C & C breached the terms of a subsequent 2012 Mediation Term Sheet entered into between the parties in November of 2012. In its complaint, Vangura seeks damages in the amount of $549,492.52, plus interest and other relief. Doc. No. 1-1. C & C denies that the 2012 Mediation Term Sheet constitutes an enforceable agreement, and seeks to compel arbitration of this dispute before Attorney Mark Shepard, pursuant to Paragraph 46 of the 2009 Settlement Agreement. Pending before this Court is Defendant's Motion to Dismiss under Fed. R. Civ. Pr. 12(b)(6)(doc. no. 12), and Plaintiff's response in opposition thereto (doc. no. 18).

## II. Standard of Review

Defendant files this Motion to Dismiss under Fed. R. Civ. Pr. 12(b)(6), alleging failure to state a claim upon which relief may be granted. *See Palcko v. Airborn Express Inc.*, 372 F.3d 588, 597 (3d Cir. 2004)("Our prior decisions support the traditional practice of treating a motion to compel arbitration as a motion to dismiss for failure to state a claim under which relief can be granted"). Given Defendant's use of many attached exhibits, in addition to the language of the applicable 2009 Settlement Agreement and the 2012 Mediation Term Sheet, this Court could not normally consider such documents on a motion to dismiss pursuant to Rule 12(b)(6). However, there is recent case law (which neither side mentions) that on a motion to compel arbitration, the Court shall employ the same standard of review as a motion for summary judgment. *Control*

*Screening LLC v. Technological Application and Production Co.*, 687 F.3d 163, 167 (3d Cir. 2012). On the one hand, Vangura seems to contend that documents outside of the pleadings may not be considered in the context of a Rule 12(b)(6) motion. However, on the other hand, Vangura also states that the facts are not in dispute, and in its response it goes so far as to rely on the same documents, including emails to and from Attorney Shepard, which are outside of the scope of the pleadings *per se*. Consistent therewith, the Court will employ the same standard of review as on a motion for summary judgment. *Control Screening LLC*, 687 F. 3d at 167. *See also Youssef v. Dep't of Health and Senior Servs.*, 423 F.App'x 221, 224 (3d Cir. 2011)(citing *Venuto v. Witco Corp.*, 117 F.3d 754, 757 (3d Cir. 1997)(When both sides rely on materials outside of the pleadings, the Court may treat a motion as a motion for summary judgment under Federal Rule of Civil Procedure 56).

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted). In deciding a summary judgment motion, the court must "view the evidence . . . through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's

burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.) *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (Court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party ).

### III. Factual Background

The crux of the current dispute centers upon Paragraph 46 of the 2009 Settlement Agreement relating to Dispute Resolution/Arbitration, and whether the 2012 Mediation Term Sheet is a valid contract which should be resolved under Paragraph 46 of the 2009 Settlement Agreement. Doc. No. 13-1. C & C argues that Vangura and C & C entered into a valid arbitration agreement (under Paragraph 46 of the Settlement Agreement), and that this dispute, over whether the 2012 Mediation Term Sheet even constitutes a valid agreement, also falls within the scope of the arbitration agreement in Paragraph 46. Vangura, however, contends on the contrary, and argues that the 2012 Mediation Term Sheet constitutes a valid contract that exists separately from Paragraph 46 of the Settlement Agreement and is not covered by Paragraph 46 thereof.

Paragraph 46 of the Settlement Agreement contains an arbitration clause which states as follows:

> 46. Dispute Resolution/Arbitration. Any dispute, controversy or claim arising out of or relating to this Agreement, including American Silestone's reporting requirements pursuant to Paragraph 10 hereof, shall be submitted first to Mark D. Shepard in writing with a copy to the party alleged to have breached this Agreement ("Notice of Breach"). For the thirty (30) day period following his receipt of the Notice of Breach, Mr. Shepard will attempt to mediate a resolution of the dispute, claim or controversy. If the dispute, claim or controversy is not resolved in the thirty (30) day period, it shall be settled by binding common law arbitration before Mark D. Shepard for a period no longer than three business days. The arbitration in Pittsburgh, Pennsylvania and a court having jurisdiction thereof may immediately issue judgment on the arbitration award. In connection with any arbitration proceeding hereunder, Mr. Shepard shall have the authority to compel discovery from any party hereto, order a third party review of sales records and issue subpoenas to third parties. The parties to the arbitration shall bear equally the arbitration fees, exclusive of attorney's fees. The Arbitrator shall have discretion, but shall not be obligated, to award attorney's fees to the prevailing party. In the event that Mark D. Shepard cannot serve as the arbitrator, the parties to the arbitration shall agree on a substitute arbitrator or, failing agreement, petition the American Arbitration Association ("AAA") in Pittsburgh, Pennsylvania or the

>AAA office with jurisdiction over Pittsburgh, Pennsylvania to appoint a substitute arbitrator.

Doc. No. 13-1.

The 2009 Settlement Agreement (doc. no. 12-1) provides that it "shall be governed, construed, and interpreted in accordance with the laws of the Commonwealth of Pennsylvania without regard to its conflict of law provisions." *Id*. at ¶ 52.

Since the signing of the 2009 Settlement Agreement, the parties have repeatedly used the dispute resolution process outlined in the Settlement Agreement. Doc. No. 13-2. In 2010, the parties signed a supplement to the Settlement Agreement regarding purchase goal requirements Doc. No. 13-2, referencing Exhibit "A". The parties also mediated other issues in 2011, and amended the Settlement Agreement yet again in January 2012 by executing a Supplement to Master Distribution/Distribution and Settlement Agreement. Doc. No. 13-2. The language of the Supplement to the Master Distribution/Distribution and Settlement Agreement actually states that "under paragraph 46 of the Master Distribution Agreement, Vangura and C & C were required to submit any dispute, controversy or claim arising out of or relating to the Master Distribution Agreement to Mark D. Shepard for mediation and, in the even mediation was unsuccessful, binding common law arbitration." Doc. No. 13-2.

It is fair to say that the parties, through the Supplement, which was executed in January of 2012, appeared to be reaffirming their commitment or recognition that they would resolve disputes via mediation or arbitration with Attorney Shepard.

According to the Declaration of Chief Operating Officer and Vice President of Distribution for C & C, Brandon Calvo, in 2012, another dispute arose regarding the "parties rights and obligations under the Settlement Agreement and Supplement to Settlement Agreement." Doc. No. 13-7 at p.2. The parties again participated in a mediation with Attorney

Shepard, and at the conclusion of the mediation, the parties signed a document entitled "Vangura/Cosentino Material Term Sheet Reached at the 11/28/12 Mediation." ("The 2012 Mediation Term Sheet") Doc. No. 13-3.  The 2012 Mediation Term Sheet summarized the parties' intent to "prepare a comprehensive Amendment to their Agreement containing these material terms and other standard and customary provisions," but, critically, also stated that "except as modified by this amendment, the Parties' obligations under the Master Distribution/Distribution and Settlement Agreement and Supplement thereto shall remain in full force and effect."  Doc. No. 13-3 at p. 2.

From a plain reading of the terms of the 2009 Settlement Agreement, the 2012 Supplement to the Settlement Agreement, and the 2012 Mediation Term Sheet, there is no language which even arguably evidences any intent by either Vangura or C&C to make any changes to, or void, the dispute resolution procedure set forth in Paragraph 46 of the Settlement Agreement.

According to the Declaration of Brandon Calvo, within a week after the 11/28/12 Mediation, a dispute arose over the language and enforceability of the 2012 Mediation Term Sheet.  On December 11, 2012, C & C wrote Attorney Shepard and Vangura explaining the nature of the dispute and requesting Attorney Shepard address the dispute, as he had done numerous times in the past.  Initially, Vangura agreed and by way of a December 14, 2012 letter, Vangura asked Attorney Shepard "to act to enforce this binding settlement."  Doc. No. 13-6.  After Attorney Shepard noted his knowledge of the circumstances of the mediation in an email dated December 22, 2012 (doc. no. 13-8), then Vangura challenged his authority to resolve the dispute.

On January 8, 2013, Attorney Shepard then wrote a letter to counsel for both parties stating that he had "no substantive or procedural concerns about making such a decision [about "whether the Parties reached an enforceable settlement agreement at the November 28, 2012 mediation] as the Parties' written agreement clearly contemplated me conducting binding arbitration proceedings following mediation efforts." Doc. No. 13-4.

## IV. Analysis

### Motion to Compel Arbitration (Motion to Dismiss Due to Arbitrability)

"Under Pennsylvania law, the parties must submit an issue to arbitration where: (1) the parties entered into an agreement to arbitrate, and (2) the dispute falls within the scope of that agreement." *McAlister v. Sentry Ins. Co..* 958 F.2d 550, 553 (3d Cir. 1992)(citing *Rocca v. Pa Gen. Ins. Co.*, 516 A.2d 772, 772-73 (Pa. Super. 1986)).

In resolving a motion to compel arbitration (titled by C & C as a motion to dismiss due to arbitrability of dispute), as stated above, the Court employs the same standard as a motion for summary judgment. *Control Screening LLC v. Tech. Application & Prod. Co.*, 687 F.3d 163, 167 (3d Cir. 2012); *Quilloin v. Tenet HealthSystem Phila.*, Inc. 673 F.3d 221, 228 (3d Cir. 2012). "The party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." *Id.*, citing *Kaneff v. Del. Title Loans*, Inc., 587 F.3d 616, 620 (3d. Cir. 2009)(internal quotation marks and citation omitted).

"If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *E.I. Dupont de Nemours & Co. v. Rhone Poulenc & Resin Intermediates, S.A.S.,* 269 F.3d 187, 194 (3d Cir. 2001)(citations omitted). If, on the other hand, a valid arbitration agreement exists between the parties, and the plaintiff's claim is within the scope of the agreement, the controversy must be submitted to arbitration. *Highmark Inc. v. Hospital Service Ass'n. of*

*Northeastern Pennsylvania*, 785 A.2d 93, 98 (Pa. Super. 2001), appeal denied, 568 Pa. 720, 797 A.2d 914 (2002). *See also Kardon v. Portare*, 353 A.2d 368, 369 (Pa. 1976) (citations omitted) ("When one party to an agreement seeks to enjoin the other from proceeding to arbitration, judicial inquiry is limited to the question of whether an agreement to arbitrate was entered into and whether the dispute falls within the scope of the arbitration.")

The core issue of whether the 2012 Mediation Term Sheet is an enforceable contract and who (or, more accurately, what tribunal) maintains proper authority to determines that issue, is the crux of this dispute. Vangura seeks to avoid the topic of whether the dispute at hand is covered under the arbitration clause of Paragraph 46 of the 2009 Settlement Agreement, and instead attempts to shift the focus to whether the 2012 Mediation Term Sheet represents a binding agreement which is enforceable by this Court.

The Court finds that the 2012 Mediation Term Sheet is intertwined with, or "arose out of," Paragraph 46 of the 2009 Settlement Agreement. In fact, the 2012 Mediation Term Sheet actually references the 2009 Settlement Agreement which contains the applicable language at Paragraph 46 (see paragraph 10 of doc. no. 13-3). Vangura's contention, that the two documents are unrelated and that one did not "arise out of" the other, is wholly unconvincing. (See Paragraph 10 of doc. no. 13-3 stating "except as modified by this amendment, the Parties' obligations under the Master Distribution/Distribution and Settlement Agreement and Supplement thereto shall remain in full force and effect.")

Vangura seeks to distance itself from the 2009 Settlement Agreement to mediate and arbitrate before Attorney Shepard by stating that it was "intended to apply to business-related disputes concerning the specific terms thereof, and allegations that a party was in breach of those terms." Moreover, according to Vangura, "there is nothing in Paragraph 46 to suggest that it was

9

intended to apply to a dispute between the parties as to whether a separate subsequently executed agreement, such as the 2012 Mediation Term sheet, is enforceable."

However, such a narrow reading of Paragraph 46 is inconsistent with precedent of the United States Court of Appeals for the Third Circuit. *See Century Indemnity. Co., v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 556 (3d Cir. 2009) (holding that arbitration clause that provides for arbitration of "any dispute . . . with reference to the interpretation of this Agreement or [the parties'] rights with respect to any transaction involved" is broad and that the presumption of arbitrability applies). Furthermore, Pennsylvania Courts have held that the terminology "arising out of or relating to" was "framed in the broadest conceivable language," and the Pennsylvania Supreme Court has expressly held that from this language, "it must be concluded that the parties intended the scope of submission to be unlimited." *Ambridge Water Auth. v. Columbia*, 328 A.2d 498, 501 (Pa. 1974); *see also*, *Callan v. Oxford Land. Dev., Inc*. 858 A.2d 1229, 1233 (Pa. Super. 2004)(arbitration agreement using "arising out of or relating to" language constitutes an "unlimited arbitration clause").

In this case, the Dispute Resolution/Arbitration Clause in Paragraph 46 of the 2009 Settlement Agreement is broad as well as unambiguous. It does not contain restrictive language, and is all encompassing on its face, governing "any and all disputes, claims or controversies . . . arising out of or relating to this Agreement." Doc. No. 13-1. Thus, keeping in mind that doubts as to whether an arbitration clause covers a particular dispute should be resolved in favor of arbitration, the Court finds that this dispute handily falls within Paragraph 46 of the 2009 Settlement Agreement. *McNulty v. H & R Block, Inc*., 843 A.2d 1267, 1271 (Pa. Super. 2004).

Judging the facts in the light most favorable to Vangura, as the non-moving party, and viewing the documents submitted by C & C, but also referenced and relied upon by Vangura, in

the light most favorable to Vangura, the Court finds that Paragraph 46 of the Settlement Agreement clearly and unambiguously covers the current dispute, as it certainly "arises out of" and "relates to" the 2009 Settlement Agreement.

As Defendant emphasizes, and this Court agrees, indeed, the 2012 Mediation Term Sheet came into existence *only after* the parties utilized the mediation process outlined in Paragraph 46 of the Settlement Agreement. Moreover, the 2012 Mediation Term Sheet specifically references the 2009 Settlement Agreement and specifically states that: "[E]xcept as modified by this amendment, the Parties' obligations under the Master Distribution/Distribution and Settlement Agreement and Supplement thereto shall remain in full force and effect." Doc. No. 13-3 at Paragraph 10; see also, Paragraphs 7 and 13.

For all of these reasons, the dispute over the enforceability of the 2012 Mediation Term Sheet is covered by Paragraph 46 of the 2009 Settlement Agreement, and the parties have voluntarily agreed therein to submit the current "dispute" to Attorney Shepard for resolution.

**Vangura's Alternative Argument Regarding a "Replacement" Arbitrator**

Again referencing documents outside of the pleadings, including "statements" and "email" by Attorney Shepard to the parties regarding his "inability to separate confidential mediation communications from his determination as arbitrator of the enforceability of the 2012 Mediation Term Sheet," Vangura seeks the appointment of a new arbitrator to "prevent privileged and confidential mediation communications from being impermissibly considered in the determination." Doc. No. 18, at pgs.10-11.

Vangura then cites to case law stating that the possibility of bias or "evident partiality," as gleaned from the words of Attorney Shepard, mandates a new arbitrator. However, as rehearsed, on January 8, 2012, Attorney Shepard sent a letter to counsel for both parties stating

11

that he had "no substantive or procedural concerns about making such a decision [about whether the Parties reached an enforceable settlement agreement at the November 28, 2012 mediation] as the Parties' written agreement clearly contemplated me conducting binding arbitration proceedings following mediation efforts." Doc. No. 13-4.

Paragraph 46 of the Settlement Agreement states that:

> In the event that Mark D. Shepard cannot serve as the arbitrator, the parties to the arbitration shall agree on a substitute arbitrator or, failing agreement, petition the American Arbitration Association ("AAA") in Pittsburgh, Pennsylvania, or the AAA office with jurisdiction over Pittsburgh, Pennsylvania to appoint a substitute arbitrator.

Doc. No. 13-1.

The Court notes that the parties actually agreed to Attorney Shepard to serve in the capacity of mediator along with him also wearing the "cap" of arbitrator if the parties were unable to resolve a dispute, a fact which Attorney Shepard appeared to recognize from a fair reading of his January 8, 2013 letter. Doc. No. 13-4. Furthermore, the language of Paragraph 46 is clear and unequivocal on this point and manifests the intentions of the parties to submit to mediation and/or arbitration for a broad range of matters "arising out of" the 2009 Settlement Agreement.

Thus, the Court denies the motion of Vangura to appoint a "replacement" arbitrator. To appoint another arbitrator would be inconsistent with Paragraph 46 of the Settlement Agreement, and would deny the parties the substantive experience of Attorney Shepard with the issues, the parties, and his considerable knowledge of the history of this dispute.

## V. Conclusion

For all of these reasons, the Court will grant Defendant's Motion to Dismiss (converted to a Motion for Summary Judgment) due to arbitrability of the dispute (doc. no. 11).[1] An appropriate Order follows.

**SO ORDERED** this 5th day of March, 2013.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc: All Registered ECF Counsel and Parties

---

[1] If this Court were to consider this motion as a motion to dismiss, because the issue centers on this Court's jurisdiction to hear this dispute, the Court could still consider matters outside the pleadings.